ORIGINAL



CASE NO. _____

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| In re | On Petition for Mandamus to the United States District Court for the Northern District of Alabama No. 2:12-cv-04139-LSC |
|---|---|
| WALTER LEROY MOODY, JR. | |

## PETITION FOR WRIT OF MANDAMUS
## BY WALTER LEROY MOODY, JR.

Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

Counsel for Walter Leroy Moody, Jr.

*In re Walter Leroy Moody, Jr.*
*Case No.* _____

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Anne E. Borelli and W. Marcus Ermine, counsel of record for Petitioner Walter

Leroy Moody, Jr., in compliance with Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rule 26.1-1, certify the following listed persons and parties may

have an interest in the outcome of this case:

1.      Anderson III, Judge R. Lanier- victim;

2.      Atlanta, Georgia NAACP - victim;

3.      Buskey, Brandon- former counsel for Mr. Moody in state collateral

        appeal;

4.      Carnes, Judge Edward- former counsel for the State of Alabama, pre-

        trial;

5.      Clark, Judge Thomas A.- victim;

6.      Coogler, Judge L. Scott- United States District Judge for the Northern

        District of Alabama, currently presiding in the underlying proceeding;

7.      Cox, Judge Emmett Ripley- victim;

8.      Crenshaw, J. Clayton- former counsel for the State of Alabama in direct

        appeal;

*In re Walter Leroy Moody, Jr.*
*Case No.* _____

9.    Currenton, James G.- former counsel for Mr. Moody in state collateral proceedings;

10.   Dyer, Judge David W.- victim;

11.   Edmondson, Judge James L.- victim;

12.   Evans, James H.- former Alabama Attorney General and former counsel for the State of Alabama at trial;

13.   Forrester, Nathan A.- former counsel for the State of Alabama in direct appeal;

14.   Freeman, Christine A.- Executive Director, Middle District of Alabama Federal Defender Program, Inc.;

15.   Gardner, Bruce- former counsel for Mr. Moody on direct appeal;

16.   Gillis, Jim- former counsel for Mr. Moody, pre-trial;

17.   Godbold, Judge John C.- victim;

18.   Goudie, Valerie- former counsel for Mr. Moody in state collateral proceedings;

19.   Govan, Jr., Thomas R.- former counsel for the State of Alabama in state collateral appeal;

20.   Harper, James R.- former counsel for Mr. Moody on direct appeal;

*In re Walter Leroy Moody, Jr.*
*Case No.* _____

21.    Hatchett, Judge Joseph W.- victim;

22.    Henderson, Judge Albert J.- victim;

23.    Hill, Judge James C.- victim;

24.    Houts, James R.- counsel for the State of Alabama on direct appeal and current counsel for the State of Alabama and the Respondent in this proceeding;

25.    Jacksonville, Florida NAACP - victim;

26.    Jaffe, Richard- former counsel for Mr. Moody, pre-trial;

27.    Johnson, Jr., Judge Frank M.- victim;

28.    Johnson, Henry M.- counsel for the State of Alabama on direct appeal and state collateral proceedings and current counsel for the State of Alabama and the Respondent in this proceeding;

29.    Jones, Judge Warren L.- victim;

30.    King, Troy- former Alabama Attorney General and former counsel for the State of Alabama in state collateral appeal;

31.    Kirby, Cary- former counsel for Mr. Moody in state collateral proceedings;

32.    Kravitch, Judge Phyllis A.- victim;

*In re Walter Leroy Moody, Jr.*
*Case No. _____*

33.  Melko, Maryanne- former counsel for the State of Alabama at trial;

34.  Mitchell, Maury- former counsel for the State of Alabama at trial;

35.  Monk II, Judge Samuel H.- Specially assigned Jefferson County Circuit Judge for Mr. Moody's state collateral proceedings;

36.  Morgan, Judge Lewis R.- victim;

37.  Morrow, Robert E.- former counsel for the State of Alabama at trial;

38.  Pryor, Jr., William H.- former Alabama Attorney General and former counsel for the State of Alabama in direct appeal;

39.  Rhea III, Judge William H.- Specially assigned Circuit Judge for Mr. Moody's state trial;

40.  Robinson, Robert E.- victim;

41.  Roney, Judge Paul H.- victim;

42.  Schuetze, Cheryl Ann- former counsel for the State of Alabama in state collateral proceedings;

43.  Siegleman, Don- former Alabama Attorney General;

44.  Sessions, Jeff- former Alabama Attorney General and former counsel for the State of Alabama at trial;

45.  Speagle, Regina F.- former counsel for the State of Alabama in direct

*In re Walter Leroy Moody, Jr.*
*Case No.* _____

appeal;

46.   Stevenson, Bryan- former counsel for Mr. Moody in state collateral appeal;

47.   Stewart, Sandra J.- former counsel for the State of Alabama at trial;

48.   Strange, Luther- Alabama Attorney General, counsel for the State of Alabama in state collateral appeal, and current counsel for the State of Alabama and the Respondent in this proceeding;

49.   Susskind, Randall- former counsel for Mr. Moody in state collateral appeal and 28 U.S.C. § 2254 proceedings;

50.   Thomas, Kim T.- Commissioner for the Alabama Department of Corrections, Respondent in the underlying proceeding;

51.   Tjoflat, Judge Gerald Bard- victim;

52.   Turberville, L. Dan- former counsel for Mr. Moody, pre-trial;

53.   Tuttle, Judge Elbert P.- victim;

54.   Vance, Helen- victim;

55.   Vance, Jr., Judge Robert S.- victims' son;

56.   Vance, Sr., Judge Robert S.- victim;

57.   White-Vance, Hon. Joyce - victims' daughter-in-law;

*In re Walter Leroy Moody, Jr.*
*Case No. _____*

58.    Williams, Richard R.- former counsel for Mr. Moody on direct appeal;

59.    Wills, Paula- former paralegal for Mr. Moody;

60.    Wood, Brenda- victim.


_____
Anne E. Borelli
Alabama Bar No. ASB-2419-A52B


_____
W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

Counsel for Walter Leroy Moody, Jr.

## CERTIFICATE OF TYPE SIZE AND STYLE

This petition is printed using 14-pitch, Times New Roman type which is proportionately spaced.

Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

Counsel for Walter Leroy Moody, Jr.

i

# TABLE OF CONTENTS

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Certificate of Type Size and Style.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Argument and Citations of Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      The Relief Sought.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.     The Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    III.    Facts Necessary to Understanding Mr. Moody's Request for Relief. 2

        A.     Relevant procedural background. . . . . . . . . . . . . . . . . . . . . 2

        B.     Relevant facts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    IV.    Reasons This Court Should Issue a Writ of Mandamus.. . . . . . . . . . . 9

        A.     Recusal is required in this case under 28 U.S.C. § 455(b)(4) because the presiding District Judge and all other judges of the United States District Court for the Northern District of Alabama are members of the class potentially affected by a grant of relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B.  Recusal of all judges of the United States District Court for the Northern District of Alabama is required in this case under 28 U.S.C. § 455(a) because presently sitting members of the court served in the United States Attorney's Office for the Northern District of Alabama at the time Mr. Moody was being prosecuted. For the same reasons, a change of venue is also appropriate in this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C.  Recusal is mandated under 28 U.S.C. § 455(a) because the facts would lead a reasonable observer to question the impartiality of the judges of the Northern District Court, including the currently presiding judge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.  The District Court incorrectly applied the law of recusal in denying Mr. Moody's Motions for Recusal and Change of Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    1.  The District Court abused its discretion by relying on the "duty to sit" concept, which has been abrogated by statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    2.  The District Court abused its discretion by relying on law governing the place of filing for a federal habeas petition instead of due process considerations governing change of venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

E.  There is no other adequate remedy available to Mr. Moody except a writ of mandamus. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

iii

V.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993). . . . . . . . . . . 29

*In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003). . . . . . . . . . . . . . . . . . 28-30

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981). . . . . . . . . . . . . . . . 27

*Brown v. Pyle*, 310 F.2d 95 (5th Cir. 1962). . . . . . . . . . . . . . . . . . . . . . . 27

*Christo v. Padgett*, 223 F.3d 1324 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . 29

*In re Fink*, 876 F.2d 84 (11th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 28

*Johnson v. Wilbur*, 375 F. App'x 960 (11th Cir. 2010). . . . . . . . . . . . . . . . . . 29

*Kerr v. United States District Court for the Northern District of California*, 426 U.S.
    394, 96 S.Ct. 2119 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). . . . . . . . 23-25

*In re Lopez-Lukis*, 113 F.3d 1187 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . 28

*Lussier v. Dugger*, 904 F.2d 661 (11th Cir. 1990). . . . . . . . . . . . . . . . . . . . . 23

*Ex parte Moody*, 888 So. 2d 605 (Ala. 1996). . . . . . . . . . . . . . . . . . . . . . . . 2

*Ex parte Moody*, No. 1110543, ___ So. 3d ___ (Ala. May 18, 2012). . . . . . . . . . . 2

*Moody v. Alabama*, 543 U.S. 964 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Moody v. State*, 888 So. 2d 532 (Ala. Crim. App. 2003). . . . . . . . . . . . . . . . 2, 5

*Moody v. State*, 95 So. 3d (Ala. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . 2

v

*In re Murchison*, 349 U.S. 133 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Nettles*, 394 F.3d 1001 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 20-23

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . 20-21, 22

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004).. . . . . . . . . . . . . . . . . . . . . . . . . 26-27

*In re School Asbestos Litig.*, 977 F.2d 764 (3d Cir. 1992). . . . . . . . . . . . . . . . 29-30

*Skilling v. United States*, 130 S. Ct. 2896 (June 24, 2010).. . . . . . . . . . . . . . . . . 27

*In re U.S.*, 158 F.3d 26 (1st Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re USA*, 624 F.3d 1368 (11th Cir. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Banks*, 942 F.2d 1576 (11th Cir. 1991). . . . . . . . . . . . . . . . . . . 11

*United States v. Chandler*, 996 F.2d 1073 (11th Cir. 1993).. . . . . . . . . . . . . . . . . 11

*United States v. Fernandez-Toledo*, 737 F.2d 912 (11th Cir. 1984). . . . . . . . . . . . 28

*United States v. Gordon*, 836 F.2d 1312 (11th Cir. 1988). . . . . . . . . . . . . . . . . . 11

*United States v. Grisham*, 63 F.3d 1074 (11th Cir. 1995). . . . . . . . . . . . . . . . . . 11

*United States v. Jordan*, 49 F.3d 152 (5th Cir. 1995).. . . . . . . . . . . . . . . . . . . . 20

*United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989). . . . . . . . . . 10, 14, 20, 24-25

*United States v. Moody*, 977 F.2d 1420 (11th Cir. 1992).. . . . . . . . . . . . . . . . 8, 19

*United States v. Moody*, 977 F.2d 1425 (11th Cir. 1992).. . . . . . . . . . . . . . . . . . 2

*United States v. Patti*, 337 F.3d 1317 (11th Cir. 2003). . . . . . . . . . . . . . . 9, 28, 30

*United States v. State of Alabama*, 828 F.2d 1532 (11th Cir. 1987). . . . . . . . 23-24

# STATUTES

18 U.S.C. § 876. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 455. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

28 U.S.C. § 455(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

28 U.S.C. § 455(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9-10, 13, 28

28 U.S.C. § 455(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 455(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

28 U.S.C. § 1651(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

28 U.S.C. § 2241(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 2241(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, 2

## STATEMENT OF JURISDICTION

This is a petition for writ of mandamus from an order of the United States District Court for the Northern District of Alabama in a habeas corpus proceeding under 28 U.S.C. § 2254. Jurisdiction in the United States Court of Appeals for the Eleventh Circuit is proper under 28 U.S.C. § 1651(a) and Federal Rule of Appellate Procedure Rule 21.

## ARGUMENT AND CITATIONS TO AUTHORITY

Petitioner Walter Leroy Moody, Jr., respectfully sets forth the following in support of his request that this Honorable Court issue a writ of mandamus.

### I. The Relief Sought

Mr. Moody requests two-fold relief: First, Mr. Moody requests the Court issue a writ of mandamus ordering the recusal of the currently presiding judge, Honorable L. Scott Coogler, District Court Judge for the Northern District of Alabama, and all other judges of the Northern District of Alabama. Second, Mr. Moody requests this Court transfer his pending habeas corpus action to a district court outside the bounds of the Eleventh Circuit.

### II. The Issues Presented

The first issue is whether, considering the extraordinary facts of this case and all relevant circumstances, Honorable L. Scott Coogler, the District Judge assigned to this case, must be recused pursuant to 28 U.S.C. § 455(b) or § 455(a). Closely related is the question of whether all judges of the United States District Court for the Northern District of Alabama must be recused.

The second issue is whether Mr. Moody's case should be transferred to a district court outside the bounds of the Eleventh Circuit.

### III.   Facts Necessary to Understanding Mr. Moody's Requested Relief

#### A.   Relevant procedural background

On November 5, 1996, Mr. Moody was convicted in Jefferson County, Alabama, of capital murder for the death of Judge Robert Vance of the United States Court of Appeals for the Eleventh Circuit.[1]  On February 10, 1997, the trial court sentenced Mr. Moody to death.  After his convictions and death sentence were upheld on direct appeal,[2] Mr. Moody filed a state postconviction petition, which the trial court summarily denied.  That denial was affirmed by Alabama's appellate courts.[3]

On December 21, 2012, Mr. Moody filed in the United States District Court for the Northern District of Alabama a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Thereafter, he filed an Amended Petition on May 10, 2013.  The State of Alabama filed a response on June 7, 2013.

After filing his § 2254 Petition in the District Court, Mr. Moody filed a Motion for Change of Venue on February 18, 2013.[4]  The Motion was denied on February 20,

---

[1] Mr. Moody was previously convicted in federal court for the same crime. *United States v. Moody*, 977 F.2d 1425 (11th Cir. 1992).

[2] *Moody v. State*, 888 So. 2d 532 (Ala. Crim. App. 2003); *Ex parte Moody*, 888 So. 2d 605 (Ala. 1996) (mem.); *Moody v. Alabama*, 543 U.S. 964 (2004).

[3] *Moody v. State*, 95 So. 3d 827, 833 (Ala. Crim. App. 2011); *Ex parte Moody*, No. 1110543, ___ So. 3d ___ (Ala. May 18, 2012).

[4] (Doc. 10.)  Attached as Exhibit 2.

2013.[5] On March 20, 2013, Mr. Moody filed a Motion to Reconsider Change of Venue and Recusal, which set forth additional facts supporting his argument.[6] On March 22, 2013, that Motion was also denied.[7]

After being appointed new counsel, Mr. Moody, through undersigned counsel, filed on May 14, 2013, a Second Motion to Reconsider Recusal and Change of Venue, setting forth additional facts and additional legal bases supporting his request.[8] On May 16, 2013, that Motion was denied.[9] This petition for writ of mandamus follows.

B.     Relevant facts

Mr. Moody was convicted in the Circuit Court of Jefferson County, Alabama, for the murder of Eleventh Circuit Court of Appeals Judge Robert S. Vance. As part of its case, the State sought to show the person who mailed the pipe bomb that killed Judge Vance also sent a pipe bomb that killed Savannah, Georgia, attorney Robert Robinson and two additional bombs that were disarmed, one at the Eleventh Circuit

---

[5] (Doc. 11.)  Attached as Exhibit 3.

[6] (Doc. 19.)  Attached as Exhibit 4.

[7] (Doc. 20.)  Attached as Exhibit 5.

[8] (Doc. 30.)  Attached as Exhibit 6.

[9] (Doc. 31.)  Attached as Exhibit 7.

3

Court of Appeals' courthouse in Atlanta, Georgia and one at the headquarters of the NAACP in Jacksonville, Florida.

Months before those bombs were mailed, "Declaration of War" letters had been sent to news media in various locations proclaiming animosity towards all judges within the Eleventh Circuit.[10]  At trial, the State argued that the same individual who murdered Judge Vance also mailed these threatening letters.[11]

After the murder of Judge Vance and Mr. Robinson, the government proceeded on the supposition that all judges throughout the Eleventh Circuit might be targets.[12] The same day a bomb arrived at the Eleventh Circuit, the Richard B. Russell federal building in Atlanta was also evacuated after a bomb threat.[13]

Judges feared becoming victims and demanded increased personal security.[14] Federal marshals provided round-the-clock protection for all judges on the Eleventh Circuit, as well as district and magistrate judges within the Circuit.  A U.S. Marshals

---

[10] *See, e.g.,* (Vol. 63, R. 109-10) (State's opening statement) and (C. 4250).

[11] Mr. Moody was charged with and convicted of mailing these letters in federal court. *See United States v. Moody*, Case No. 1:90-CR-393 (N.D. Ga. Nov. 7, 1990) (indictment, Counts 34-69, charged under 18 U.S.C. § 876 ("Mailing threatening communications")).

[12] (Doc. 19 at 4-11.)  Attached as Exhibit 4.

[13] Article attached as Exhibit 8.

[14] *Federal Judges Seek More Protection*, MIAMI HERALD, June 10, 1991, at A4.

4

Service spokesman warned judges to be "suspicious even of packages that seem to be coming from a family member or familiar address."[15]  Senior Eleventh Circuit Judge James C. Hill stated, "I wouldn't [open a package] right now unless I knew who handed them to me."[16]

Many district court judges said they viewed themselves to be "more likely targets" than appeals court judges because the latter rarely had face-to-face contact with defendants.  District Court Judge J. Owen Forrester planned to take a package he had received to be x-rayed because he could not determine who sent it.[17]  District Court Judge Martin Shoob summed up the uneasiness generated by the bombing: "We all think this isn't going to happen to us.  When it does, you realize everyone is exposed."[18]

In the weeks that followed, a group called "Americans for a Competent Federal Judiciary" sent letters to the media accepting responsibility for the bombings and complaining about the Eleventh Circuit's "callous disregard for justice."[19]

---

[15] Article attached as Exhibit 9.

[16] Article attached as Exhibit 10.

[17] *Id.*

[18] Article attached as Exhibit 11.

[19] *Moody*, 888 So. 2d at 542.

5

As of January 1, 1990, authorities still had no suspect in the bombings, despite a massive, sustained investigation. In anticipation of another possible bombing, FBI agents conducted a precautionary search of the NAACP's Emancipation Day celebration and police officers stood outside throughout the service.[20]

When the Eleventh Circuit reconvened, plainclothes officers passed through the courtrooms every half hour.[21] Arguments scheduled to occur in Miami were moved to Atlanta so Marshals could concentrate their security efforts on a single building.[22] Lawyers were required to ride the elevator with a U.S. Marshal escort.[23]

By February 1990, the FBI had not settled on a perpetrator in its "No. 1 case."[24] They searched multiple locations, including the homes of Mr. Moody and other suspects.[25] On April 25, 1990, when the car window of Eleventh Circuit Judge James L. Edmondson shattered on his morning commute, authorities undertook an

---

[20] Article attached as Exhibit 12.

[21] Article attached as Exhibit 13.

[22] *Id.* at C2.

[23] *Id.*

[24] Article attached as Exhibit 14.

[25] *Id.*

investigation to determine if that incident was related to the bombings.[26]

In July 1990, the FBI settled on Mr. Moody as its primary suspect, although he was not indicted on charges related to the bombings until November 1990. After Mr. Moody's arrest, the head of the Southern Christian Leadership Conference expressed the sentiment, "I think that this is just as mysterious and weird now as it ever was. I don't feel any less apprehensive now that they've arrested this man."[27]

Since Judge Vance's death, seventeen members of the Eleventh Circuit had received death threats.[28] Months later, federal marshals continued to guard appellate, district court, and magistrate judges. The judiciary followed strict protocol for handling its mail. Senators sponsored legislation to eliminate vesting periods for survivor benefits in the event of future judicial assassination.[29] Federal judges asked Congress for to fund home security systems, cellular telephones, and remote car starters.[30] Judge Stanley Sporkin lamented, "That was our Pearl Harbor. Are we

---

[26] Article attached as Exhibit 15.

[27] Fred Grimm, *Time Offers No Answers to Deadly Pipe Bombings in the South*, MIAMI HERALD, Aug. 16, 1990, at A12.

[28] Article attached as Exhibit 16.

[29] Article attached as Exhibit 17.

[30] *Federal Judges Seek More Protection*, MIAMI HERALD, June 10, 1991, at A4.

going to have to lose another guy or two before somebody does something?"[31]

When Mr. Moody's case proceeded to federal court, blanket recusals were granted on the basis of the courts' class status. In the Northern District of Georgia, for example, that court explicitly recused itself in its entirety because of this "victim" status:

> Due to the unique circumstances of this case, involving an alleged assault upon the entire Eleventh Circuit and its constituent judges, we find that there exists the possibility that "an objective, disinterested lay observer fully informed of the facts . . . would entertain a significant doubt about the judge's impartiality," *United States v. Kelley* [*sic*], 888 F.2d 732, 744-45 (11th Cir. 1989), if any one of us were to preside over the trial of this case.[32]

On Mr. Moody's appeal of his federal conviction, the Fourth Circuit, sitting by designation, summarized the Eleventh Circuit's recusal as follows: "In February 1990, . . . all judges of this court [the Eleventh Circuit] entered an order recusing themselves 'from participating in this case and in any other cases relating to the investigation of the murder of the Honorable Robert S. Vance in which Walter Leroy Moody is a party.'"[33]

---

[31] *Id.*

[32] Order, *United States v. Moody*, Case No. 1:90-CR-393 (N.D. Ga. Feb. 22, 1991). Attached as Exhibit 18.

[33] *United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992).

8

## IV.    Reasons This Court Should Issue a Writ of Mandamus

A.    <u>Recusal is required in this case under 28 U.S.C. § 455(b)(4) because the presiding District Judge and all other judges of the United States District Court for the Northern District of Alabama are members of the class potentially affected by a grant of relief.</u>[34]

Title 28, United States Code, section § 455(b)(4) – requires recusal where the judge or magistrate "has . . . any other interest that could be substantially affected by the outcome of the proceeding." Recusal under Section 455(b) is mandatory.[35] The Northern District Court's, including Judge Coogler's, position as a member of the class targeted by the perpetrator of the crimes of which Mr. Moody was convicted thus requires recusal.

Following the murder of Judge Vance and the discovery of bombs at the Eleventh Circuit building in Atlanta, the government assumed all judges within the Eleventh Circuit were susceptible to attack. Judges were given additional security. Later, in his trials before both the Northern District of Georgia and the Circuit Court of Jefferson County, Alabama, the prosecution in each case introduced evidence that threatening letters had been sent directly to each judge of the Eleventh Circuit.

---

[34] Although this argument was presented in Mr. Moody's Second Motion to Reconsider Recusal and Change of Venue (Doc. 30 at 2-4), the District Court's order denying that Motion failed to address it. (Doc. 31.)

[35] *United States v. Patti*, 337 F.3d 1317, 1322 (11th Cir. 2003) (citation omitted).

9

On the basis of its class status, the Northern District of Georgia recused itself in its entirety. And the Eleventh Circuit recused itself from all cases related to Mr. Moody's prosecution for Judge Vance's murder.

While the currently presiding judge was not on the bench at the time of the attacks and has averred he had no personal acquaintance with Judge Vance,[36] he and all judges of the Northern District of Alabama are now members of the victim class in this case and, thus, to an objective observer, have an "interest that could be substantially affected by the outcome of the proceeding."[37] In such circumstances, an objective, lay observer would reasonably have a significant doubt respecting impartiality.[38]

Because Judge Coogler has determined not to recuse himself, this Court should issue a writ of mandamus and order recusal. And, because every judge and magistrate of the Northern District is, likewise, a member of the same class, the recusal should be applicable to all members of that Court.[39]

---

[36] (Doc. 11 at 6-7.) Attached as Exhibit 3.

[37] 28 U.S.C. § 455(b)(4).

[38] *United States v. Kelly*, 888 F.2d 732, 744-45 (11th Cir. 1989).

[39] Even if this Court were to find that Section 455(b) does not govern in this case, the above-described circumstance should still be considered in the Section 455(a) analysis.

10

B.    Recusal of all judges of the United States District Court for the Northern District of Alabama is required in this case under 28 U.S.C. § 455(a) because presently sitting members of the court served in the United States Attorney's Office for the Northern District of Alabama at the time Mr. Moody was being prosecuted.  For the same reasons, a change of venue is also appropriate in this case.

At least three current members of the United States District Court for the Northern District of Alabama served as Assistant United States Attorneys ("AUSA") in the Criminal Division[40] of the U.S. Attorney's Office for the Northern District of Alabama during the time Mr. Moody's case was being investigated and tried by the federal government: Chief District Judge Sharon Lovelace Blackburn and Magistrates John E. Ott and Harwell G. Davis.[41]  That office was one of the jurisdictions involved in the investigation of the murder of Judge Vance and was a signatory to the plea

---

[40] Exhibit 19 (stating that Chief Judge Blackburn served in the Criminal Division from 1985-91); *United States v. Gordon*, 836 F.2d 1312, 1313 (11th Cir. 1988) (naming "John Ott, Asst. U.S. Attorney, Birmingham, AL," as counsel for the government); *United States v. Grisham*, 63 F.3d 1074, 1076 (11th Cir. 1995) (same); *United States v. Banks*, 942 F.2d 1576, 1577 (11th Cir. 1991) (naming "Harwell G. Davis, III, . . . Asst. U.S. Atty[], Birmingham, AL," as counsel for the government); *United States v. Chandler*, 996 F.2d 1073, 1079 (11th Cir. 1993) (same).

[41] *Blackburn, Sharon Lovelace*, Biographical Directory of Federal Judges, History of the Federal Judiciary, Federal Judicial Center, attached as Exhibit 19; *Honorable John E. Ott*, About the Faculty, Developments and Trends in Health Care Law (CLE symposium brochure), Cumberland School of Law, Samford University, Sept. 23, 2011, attached as Exhibit 20; *Judicial Milestones*, THE THIRD BRANCH (May 1998), attached as Exhibit 21.

agreement offered to Mr. Moody's co-defendant.[42]  Although Mr. Moody cannot demonstrate that any of these now-judges were directly involved in the investigation or prosecution, the case was a major one and can reasonably be presumed to have drawn contribution of resources from the office at large.

Joyce White Vance, the daughter-in-law of the late Judge Vance, is the current United States Attorney ("USA") for the Northern District of Alabama.  Two members of the Northern District Court were colleagues of hers at the U.S. Attorney's Office, where she has served since 1991.[43]  In 2002, she joined the appellate division of the U.S. Attorney's Office and later headed the division, where she frequently argued before Eleventh Circuit Judges. In 2009, her swearing-in as USA was conducted at the symbolically chosen Robert S. Vance Federal Building and Courthouse.

One of USA Vance's professional specialties is terrorism, and she served as her office's "go-to person when it came to explosives" and acquired "'jaw-dropping'"

---

[42] Plea agreement, attached as Exhibit 22.

[43] *Meet the U.S. Attorney: Joyce White Vance*, The United States Attorney's Office, Northern District of Alabama, attached as Exhibit 23. Chief Judge Blackburn was elevated to the bench approximately a month before USA Vance joined the U.S. Attorney's Office. *Cf.* Exhibit 19 (noting Chief Judge Blackburn's commission effective May 30, 1991) and Exhibit 23 (noting USA Vance began her career with the U.S. Attorney's office in July 1991).

12

knowledge of the technical aspects of bomb-making.[44] This interest in explosives, more likely than not, involves an interest in Mr. Moody's case. An objective observer might reasonably conclude that USA Vance discussed her area of expertise with her then-colleagues.

While Section 455(b) sets out specific grounds which automatically mandate recusal, Section 455(a) is broader, requiring recusal "in any proceeding in which [the court's] impartiality might reasonably be questioned." Where the situation giving rise to the request for recusal is similar to, though not exactly the same as, one of the mandatory provisions of Section 455(b), the balance should tip in favor of recusal.

Section 455(b)(2), in part, requires recusal "[w]here in private practice [the court] served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter." As discussed above, present members of the District Court served in the U.S. Attorney's Office during the period when Mr. Moody was being investigated and prosecuted by the government. The possibility that these members of the court possess special knowledge of the circumstances of the case is substantial. Even if these members of the court do not have special knowledge of the investigation or

---

[44] Jeff Hanson and Robert K. Gordan, *Bomb-Expert, Mother, Artist Known as Rock Under Pressure*, BIRMINGHAM NEWS, May 24, 2009, at 1A.

prosecution and even though no actual partiality exists, an objective layman would reasonably find an appearance of partiality.

> C.    Recusal is mandated under 28 U.S.C. § 455(a) because the facts would lead a reasonable observer to question the impartiality of the judges of the Northern District Court, including the currently presiding judge.

Additional facts, described in this section, when considered in conjunction with those previously discussed, would lead "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought [to] entertain a significant doubt about the judge's impartiality."[45]

Judge Vance served as a federal appeals court judge for twelve years. Eleventh Circuit colleague James C. Hill described him as "one of the highest-quality judges you will ever meet."[46]  Alabama Governor Guy Hunt considered him "one of the leading judges in the country."[47]  Upon Judge Vance's death, Judge Gerald Tjoflat wrote, "I express the sentiments of every member of the court when I say that we have lost a great judge and a very good friend."[48]  Senator and former Alabama Supreme Court Justice Howell Heflin noted Judge Vance would "occupy the pages of history

---

[45] *Kelly*, 888 F.2d at 744-45.

[46] Article attached as Exhibit 24.

[47] Article attached as Exhibit 25.

[48] *Court of Appeals Judge Killed*, THE THIRD BRANCH, VOL. 22, NO. 1, Jan. 1990, at 4.  Attached as Exhibit 26.

of Alabama for his leadership of reasoned sanity."[49]

Judge Vance was reassigned from the Fifth Circuit to the Eleventh Circuit when the circuit was divided in 1981. He served alongside one of the current judges and six of the current senior judges. The current Chief Judge was appointed to fill Judge Vance's seat.

Prior to his career as a jurist, Judge Vance received both his B.A. and his J.D. from the University of Alabama, where he was elected president of the Student Government Association. Judge Vance went on to serve as Chairman of the Alabama Democratic Party from 1966 to 1977. After his appointment to the judiciary, he remained connected to Alabama politics: Al LaPierre, then Executive Director of the Alabama Party, recalled the judge would call him frequently to talk politics, noting, "His political instincts never left him."[50]

More than 700 mourners, including "a generation of Alabama political figures," attended a memorial service in Judge Vance's honor.[51] At the service, a federal bankruptcy judge described Judge Vance as "a man who stood up for the

---

[49] Article attached as Exhibit 27.

[50] Adam Nossiter, *Terror in the South*, ATLANTA CONST., Dec. 20, 1989, at A7.

[51] Adam Nossiter and Joe Drape, *Safety Worries Leave Little Time to Mourn Judge*, ATLANTA CONST., Dec. 21, 1989, at A7.

15

underdog and the oppressed" and added, "no wonder his assassins could not stand such a man in their presence."[52]

The Eleventh Circuit held a private memorial service with 200 people in attendance, including appeals court and district court judges, lawyers, former law clerks, court staff, family members, and bar association presidents from Alabama, Georgia, and Florida. U.S. Supreme Court Justice Anthony Kennedy spoke at the hour-long service, saying that Judge Vance would always hold "'a sacred presence' in the courtrooms of Eleventh Circuit Court of Appeals."[53]

The University of Alabama set up a memorial fund in Judge Vance's name.[54] Ultimately, Judge Vance was memorialized by a named chair at the law school of which he was an alumnus. The current holder of the chair is Professor Alan

---

[52] Article attached as Exhibit 27.

[53] David Beasley, *Slain Judge Remembered at Courthouse: Killing Won't Weaken System, Colleagues Vow*, ATLANTA JOURNAL-CONST., Feb. 5, 1990, at A1; David Beasely, *Courtroom Is Packed to Pay Tribute to Judge Slain in Mail Bombing*, ATLANTA JOURNAL-CONST., Feb. 6, 1990, at D2. Attached as Exhibit 28.

[54] *Robert Vance Memorial Fund*, THE THIRD BRANCH, VOL. 22, NO. 2, Feb. 1990, at 3. Attached as Exhibit 29.

Durham.[55]  His immediate predecessor was Professor Martha Morgan.[56]  The presently presiding District Court judge is listed as an Adjunct Professor at the University of Alabama School of Law[57] and is a colleague of these professors.[58]

In 1990, the entire Alabama Congressional delegation co-sponsored a bill to rename the Federal Building in Birmingham as the Robert S. Vance Federal Building and United States Courthouse.  The building is a constant reminder of the crime for which Mr. Moody was convicted and is located one block away from the courthouse where the Northern District of Alabama currently sits.  Frequently, when the building appears in the media, the tragic fate of Judge Vance is mentioned.[59]  At the present time, as it undergoes renovation, that building and the reason for its naming are in the

---

[55] Alan Durham, Judge Robert S. Vance Professor of Law, Faculty Directory Law School Directory, University of Alabama School of Law.  Attached as Exhibit 30.

[56] Martha Morgan, Robert S. Vance Professor Emerita of Law, Faculty Directory Law School Directory.  Attached as Exhibit 31.

[57] Judge Scott Coogler, Adjunct Professor, Faculty Directory Law School Directory.  Attached as Exhibit 32.

[58] The presently presiding Judge previously voluntarily recused himself from another case involving a suit by the University of Alabama.  *The University of Alabama Board of Trustees v. New Life Art, Inc., et al.*, Case No. 7:05-cv-00585-AKK (N.D. Ala. Apr. 3, 2008) (Doc. 129), attached as Exhibit 33.  *See* Adam Jones, *Daniel Moore case gets its fourth judge*, TUSCALOOSA NEWS (Apr. 11, 2008), attached as Exhibit 34.

[59] Article attached as Exhibit 36.

news recurrently.[60]

Judge Vance's legacy continues with the achievements of his son and daughter-in-law. Robert Vance, Jr., has said that his father's death was the event that "led me and my wife to pursue our careers in public service."[61]  In 2002, Robert S. Vance, Jr., was appointed to an Alabama circuit court judgeship by Governor Don Siegelman, who had investigated his father's murder as Attorney General.  Judge Vance, Jr., has continued to sit on the Circuit Court in Birmingham for the last decade.  Last year, Judge Vance, Jr., was defeated in a race for Chief Justice of the Alabama Supreme Court.  When he entered the race for the Alabama Supreme Court, the media acknowledged that their readers would be familiar with the name because of his father and particularly the murder of his father.[62]  During the course of his campaign, Judge Vance, Jr., discussed his father's murder as the impetus propelling him into public service.[63]  Mentions of Judge Vance, Sr., in articles published at the time of his daughter-in-law's swearing-in as U.S. Attorney are too numerous to cite.[64]

---

[60] Article attached as Exhibit 37.

[61] Article attached as Exhibit 38.

[62] Article attached as Exhibit 39.

[63] Article attached as Exhibit 40.

[64] *But see* Joyce Spielberger, *U.S. Attorney Joyce Vance: "We're as vulnerable as Israelis,"* BIRMINGHAM JEWISH FOUNDATION (Oct. 28, 2009) ("During the

Mr. Moody's case continues to be of such interest to the Birmingham area that the media have even reported the District Court's denial of his recusal request.[65] The case has been linked by Birmingham-based media in stories reporting other crimes, for example, the recent killings of two district attorneys in Texas.[66]

Judge Karen O. Bowdre, has already recused herself for unstated reasons.[67] Previously, the United States District Court for the Northern District of Georgia recused itself in its entirety at Mr. Moody's federal trial related to the same allegations. The Eleventh Circuit likewise recused itself from participating in any cases related to the murder of the Judge Vance in which Mr. Moody is a party.[68]

The accumulation of connections between the entire United States District Court for the Northern District of Alabama and institutions or individuals related to Judge Vance, together with the recurring notice Mr. Moody's case draws from the media, combine to create an environment wherein "an objective, disinterested, lay

---

question and answer portion of the meeting, . . . She was asked about her late father-in-law, well-known federal judge Robert S. Vance, Sr. who was killed by a mail bomb in 1989."). Attached as Exhibit 41.

[65] Article attached as Exhibit 42.

[66] Article attached as Exhibit 43.

[67] (Doc. 4.) Attached as Exhibit 1.

[68] *Moody*, 977 F.2d at 1423. When Mr. Moody's case proceeded to trial in Jefferson County, Alabama, all the Circuit Court judges recused themselves also.

19

observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."[69] Recusal and change of venue will preserve the appearance of impartiality and have no significant precedential value for other habeas cases, in that the circumstances of this case are extremely rare and unlikely to come before this Court again.

The question of recusal is assessed on a case-by-case basis.[70] Cases examining the recusal question in the context of threat or harm to a judge have typically resulted in a finding of an appearance of impropriety, provided a desire for recusal did not motivate the defendant's actions.[71] In similar scenarios, many courts have recused themselves *sua sponte*, just as the Eleventh Circuit did in Mr. Moody's federal case.[72]

In *Nichols*, the Tenth Circuit granted a writ of mandamus ordering the recusal

---

[69] *Kelly*, 888 F.2d at 744-45.

[70] *In re U.S.*, 158 F.3d 26, 31 (1st Cir. 1998) ("Typically, cases implicating section 455(a) are factspecific and thus sui generis. Comparison, therefore is an inexact construct."); *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) ("[C]ases within § 455(a) are extremely fact driven 'and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence.'"(quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)).

[71] *See, e.g., Nichols*, 71 F.3d at 352; *In re Nettles*, 394 F.3d 1001, 1003 (7th Cir. 2005).

[72] *See, e.g.*, Order, *United States v. Loughner*, No. 11-35M (D. Ariz. Jan. 12, 2011) (recusing all district and magistrate judges in District of Arizona where defendant charged with murder of District Court Judge John Roll), attached as Exhibit 44; *Nettles*, 394 F.3d at 1003 (*sua sponte* recusal by the Seventh Circuit).

20

of the district court judge in the trial of one of the defendants accused of bombing the federal building in Oklahoma City. Although the judge experienced no personal loss of family or friends in the bombing, the Tenth Circuit found that an appearance of impropriety existed where his courtroom and chambers were damaged by the blast and a member of his staff was slightly injured.[73] Following the judge's recusal, the Tenth Circuit selected a district court judge from Colorado to preside over the trial.[74]

Similarly, in *Nettles*, the Seventh Circuit both mandated recusal of the district court judge and recused itself *sua sponte*.[75] The defendant had been charged with attempted destruction of the Dirksen Courthouse in Downtown Chicago, which housed both the Eastern District of Illinois and the Seventh Circuit.[76] The Government contended the defendant had purchased ammonium nitrate from one undercover federal agent and had sold it to a second undercover agent who was posing as a terrorist for the purpose of destroying the courthouse.[77] The district court judge determined recusal was unnecessary because there had never been "any real

---

[73] 71 F. 3d at 350, 352.

[74] Article attached as Exhibit 45.

[75] 394 F.3d at 1003.

[76] *Id.* at 1002.

[77] *Id.*

21

danger" of damage to the courthouse because the defendant's "accomplices" were federal agents.[78] As such, she found she had no "actual fear of harm" that could have an affect on her rulings in the case.[79] While the Seventh Circuit made clear it was not suggesting the district court judge harbored any actual prejudice against the defendant, it held that an appearance of impropriety nevertheless existed: A reasonable observer would think that a judge who works in the Dirksen building would want Nettles to be convicted and given a long sentence, rather than to be set free, either forthwith or sooner rather than later, to make another attempt to destroy the courthouse or its occupants.[80]

Here, just as the defendants in *Nichols* and *Nettles*, Mr. Moody stands accused of taking actions to harm a federal judge. That the presiding judge and the other judges of the Northern District neither suffered personal or actual harm from Mr. Moody's alleged actions nor held a close personal relationship with Judge Vance does not eliminate the appearance of impropriety that would result from such a judge sitting in judgment of the death sentence doled out to Mr. Moody for the murder of an appeals court judge within the Circuit. Further, as in *Nettles*, a reasonable

---

[78] *Id.*

[79] *Id.*

[80] *Id.*

22

observer would likely conclude that any judge associated with the Eleventh Circuit would be invested in the punishment and execution of the man convicted of murdering one of its own.

D.    The District Court incorrectly applied the law of recusal in denying Mr. Moody's Motions for Recusal and Change of Venue.

1.    The District Court abused its discretion by relying on the "duty to sit" concept, which has been abrogated by statute.

In determining not to recuse, the District Court invoked a "duty to sit."[81] However, Congress eliminated the "duty to sit" principle when it amended 28 U.S.C. § 455. This Court has recognized this amendment to the rule and examined its effect. In *United States v. State of Alabama*, the Court prefaced its analysis of recusal with a description of the effect of the amendment of Section 455: "The statute [28 U.S.C. § 455] also did away with the 'duty to sit' so the benefit of the doubt is now to be resolved in favor of recusal."[82] This change in the law "broadened the grounds and

---

[81] (Doc. 11 at 7) and (Doc. 20 at 2-3) (relying on same reasons previously stated as grounds to deny). Attached as Exhibits 3 and 5, respectively.

[82] 828 F.2d 1532, 1540 (11th Cir. 1987), *overruled on other grounds by Lussier v. Dugger*, 904 F.2d 661, 664 (11th Cir. 1990). *See also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 871 (1988) (Rehnquist, C.J., White, J., and Scalia, J., dissenting) ("The amended statute also had the effect of removing the so-called 'duty to sit,' which had become an accepted gloss on the existing statute.") (footnote omitted). The dissent in *Liljeberg* did not disagree with the majority on the broadening effect of the 1974 amendment, but on the availability of remedy where a judge does not recuse because he is found not to have been aware of the relevant

23

loosened the procedure for disqualification in the federal courts."[83]

> Section 455(a) requires a judge to disqualify himself when "his impartiality might reasonably be questioned." Thus, under § 455(a) an actual demonstrated prejudice need not exist in order for a judge to recuse himself: "disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." Congress expressly intended the amended § 455 to promote public confidence in the impartiality of the courts by eliminating even the appearance of impropriety. . . . the general effect of this statute was to liberalize greatly the scope of disqualification in the federal courts.[84]

Similarly, in *United States v. Kelly*, this Court reiterated that "Section 455 does away with the old 'duty to sit' doctrine and requires judges to resolve any doubts they may have in favor of disqualification."[85] Thus, a "duty to sit" cannot be the decisive factor in a court's determination not to recuse.

In *Liljeberg v. Health Services Acquisition Corp.*, the United States Supreme Court described the "very purpose of § 455(a) [to be] to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."[86] An appearance of impropriety might exist even where the judge lacks knowledge of the

---

facts.

[83] *United States v. State of Alabama*, 828 F.2d at 1540.

[84] *Id.* at 1540-41 (footnotes with citations omitted).

[85] 888 F.2d at 744.

[86] 486 U.S. 847, 865 (1988).

24

facts suggesting an interest in the outcome of the case: "Scienter is not an element of a violation of § 455(a)."[87]  The *Liljeberg* Court quoted with approval the lower court's assessment of the scope of operation of Section 455:

> "If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible."[88]

Thus, "an actual demonstrated prejudice need not exist in order for a judge to recuse himself . . . ."[89]  "The standard for recusal under section 455(a) is '"whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."'"[90]

The totality of the facts, when viewed by an "objective, disinterested lay observer," do give rise to significant doubt in this case.  Because "the benefit of the doubt is now to be resolved in favor of recusal,"[91] not a "duty to sit," the District

---

[87] *Id.* at 859.

[88] *Id.* at 860.

[89] *United States v. State of Alabama*, 828 F.2d at 1541.

[90] *Kelly*, 888 F.2d at 744-45.

[91] *United States v. State of Alabama*, 828 F.2d at 1540.

25

Court should have granted Mr. Moody's motion to recuse.

    2.    The District Court abused its discretion by relying on law governing the place of filing for a federal habeas petition instead of due process considerations governing change of venue.

The District Court further denied Mr. Moody's requests for recusal by relying on *Rumsfeld v. Padilla*.[92] The District Court held that "a petitioner seeking habeas relief does not have a clear and indisputable right to have his petition transferred to a different jurisdiction" because "'[t]he plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district; the district of confinement.'"[93]

*Padilla* is inapposite on the question of recusal and change of venue because that case did not involve recusal, and it did not involve a "person in custody under the judgment and sentence of a State court,"[94] as here. Pursuant to 28 U.S.C. § 2241(d), venue is proper in either the district of confinement or the district of conviction.[95] Mr. Moody filed his habeas petition in the Northern District of Alabama because he is challenging a judgment and sentence imposed as a result of a conviction within that

---

[92] 542 U.S. 426, 443 (2004).

[93] (Doc. 11 at 5-6) (citing *Padilla*, 542 U.S. at 443 & 28 U.S.C. § 2241(a)).

[94] 28 U.S.C. § 2241(d).

[95] *Id.*

26

District. He could not choose a district outside of Alabama, or the Eleventh Circuit, in which to *file*.

Where a change of venue is requested, however, jurisdiction must necessarily be transferred to some other district, since "venue" is always restricted to those jurisdictions with some direct link to the case.[96] In addressing change of venue in the trial context, the Supreme Court has explained that "[t]he Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district *at the defendant's request* if extraordinary local prejudice will prevent a fair trial – a 'basic requirement of due process.'"[97] Where constitutional provisions establishing venue can be adjusted, statutory ones must be equally flexible. For this reason, the statutory provision governing venue in habeas presents no impediment to granting Mr. Moody's motion for recusal and change of venue.[98]

---

[96] "Jurisdiction is the power to hear and determine a cause – the power to adjudicate. . . . Venue is the place where that power may be exercised." *Brown v. Pyle*, 310 F.2d 95, 96 (5th Cir. 1962). In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[97] *Skilling v. United States*, 130 S. Ct. 2896, 2913 (June 24, 2010) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)) (emphasis added).

[98] Mr. Moody recognizes the distinctions between changes of venue in criminal and civil proceedings. His request for change of venue rests solely on the need for all district judges within the Eleventh Circuit to recuse.

27

E.    There is no other adequate remedy available to Mr. Moody except a writ of mandamus.

"Mandamus is the appropriate remedy for a judge's failure to recuse when required to do so by the recusal statute."[99]  It "is an extraordinary remedy, which is available only to correct a clear abuse of discretion or usurpation of judicial power[100] [and] the petitioner [has] the burden of showing that [his] right to issuance of the writ is 'clear and indisputable.'"[101]  And mandamus "is appropriate only when 'no other adequate means are available to remedy a clear usurpation of power or abuse of discretion by the district court.'"[102]

Both 28 U.S.C. §§ 455(a) and (b) provide a judge "shall" disqualify himself in certain situations.  Mandamus, therefore, is the appropriate remedy whether recusal is required under the more specific provisions of 28 U.S.C.§ 455(b) or the more

---

[99] *In re BellSouth Corp.*, 334 F.3d 941, 979 (11th Cir. 2003) (Tjoflat, J., dissenting) (citation omitted); *see also Patti*, 337 F.3d at 1322-23 ("Patti immediately could have petitioned this Court for a writ of mandamus upon the denial of his motion [to recuse]. . . .")

[100] *In re Lopez-Lukis*, 113 F.3d 1187, 1187-88 (11th Cir. 1997) (citing *In re Fink*, 876 F.2d 84 (11th Cir. 1989) & *U.S. v. Fernandez-Toledo*, 737 F.2d 912, 919 (11th Cir. 1984)).

[101] *Id.* (citing *Kerr v. United States District Court for the Northern District of California*, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124 (1976)).

[102] *In re USA*, 624 F.3d 1368, 1372 (11th Cir. 2010) (citation omitted).

28

general provision of 28 U.S.C. § 455(a).[103] As set forth above in this petition, recusal in this case is required under either or both sections, and mandamus is appropriate to correct the District Court's abuse of discretion in thrice denying Mr. Moody's motions for recusal. Mr. Moody has established, by citations to particular facts in this petition, that his right to a writ of mandamus is clear and indisputable.

Mr. Moody has filed three motions to recuse in the District Court, each time adding additional facts and legal argument to support his request. And each time, the District Court has denied Mr. Moody's request. Although the District Court's refusal to recuse is reviewable on appeal[104] and "review after final judgment can (at a cost) cure the harm to a litigant, it cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent."[105] As the Third Circuit Court of Appeals has noted, "virtually every circuit" court of appeals has recognized the necessity and propriety of interlocutory review of disqualification issues on petitions for mandamus "to ensure that judges do not adjudicate cases that they have no

---

[103] *See Bellsouth*, 334 F.3d at 979 (Tjoflat, J., dissenting).

[104] *Johnson v. Wilbur*, 375 F. App'x 960, 965 (11th Cir. 2010) (citing *Christo v. Padgett*, 223 F.3d 1324, 1333 n.10 (11th Cir. 2000)).

[105] *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 163 (3d Cir. 1993) (quoting *In re School Asbestos Litigation*, 977 F.2d 764, 776 (3d Cir. 1992)).

statutory power to hear."[106]  Mandamus is an appropriate remedy to correct the District Court's abuse of discretion here in failing to recuse itself where the facts mandate recusal.[107]

## V.    Conclusion

Having thrice sought relief in the District Court, Mr. Moody petitions for a writ of mandamus ordering all judges of the United States District Court for the Northern District of Alabama to recuse themselves and transferring venue of this habeas action to a district court outside the bounds of the Eleventh Circuit.

Respectfully submitted this _12th_ day of June, 2013.

ANNE E. BORELLI
Alabama Bar No. ASB-2419-A52B
Email: anne_borelli@fd.org

W. MARCUS ERMINE
Georgia Bar No. 321851
Email: marcus_w_ermine@fd.org

Federal Defenders for the Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353

*Counsel for Walter Leroy Moody, Jr.*

---

[106] *In re School Asbestos Litigation*, 977 F.2d 764, 778 (3d Cir. 1992) (citing cases from each circuit as support for this proposition).

[107] *BellSouth*, 334 F.3d at 979 (Tjoflat, J., dissenting); *see Patti*, 337 F.3d at 1322-23.

30

## CERTIFICATE OF SERVICE

I hereby certify that on June _12TH_, 2013, I have served a true and correct copy

of the foregoing, with all accompanying exhibits, to the following opposing counsel

and the presiding District Court judge, in accordance with 11th Cir. R. 21-1:

James R. Houts
Asst. Attorney General
501 Washington Avenue
Montgomery, Alabama 36130

Hon. L. Scott Coogler
U.S. District Court Judge
2005 University Blvd.
Tuscaloosa, Alabama 35401

_Anne E. Borelli_
ANNE E. BORELLI
Alabama Bar No. ASB-2419-A52B
E-mail: Anne_Borelli@fd.org

W. MARCUS ERMINE
Georgia Bar No. 321851
E-mail: marcus_w_ermine@fd.org

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353

Counsel for Walter Leroy Moody, Jr.