CASE NO. 13-12657

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| In re<br><br>WALTER LEROY MOODY, JR. | On Petition for Mandamus to the United States District Court for the Northern District of Alabama No. 2:12-cv-04139-LSC |

# PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*


Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

*Counsel for Walter Leroy Moody, Jr.*

## CERTIFICATE OF INTERESTED PERSONS

Anne E. Borelli and W. Marcus Ermine, counsel of record for Petitioner Walter Leroy Moody, Jr., in compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 35-5(b), certify the following listed persons and parties may have an interest in the outcome of this case.

1. Anderson III, Judge R. Lanier - victim;
2. Atlanta, Georgia NAACP - victim;
3. Barkett, Judge Rosemary - member of victim class;
4. Buskey, Brandon - former counsel for Mr. Moody in state collateral appeal;
5. Carnes, Chief Judge Ed - former counsel for the State of Alabama, pre-trial, and member of victim class;
6. Clark, Judge Thomas A. - victim;
7. Coogler, Judge L. Scott - United States District Judge for the Northern District of Alabama, currently presiding in the underlying proceeding;
8. Cox, Judge Emmett Ripley - victim;

9. Crenshaw, J. Clayton - former counsel for the State of Alabama in direct appeal;
10. Currenton, James G. - former counsel for Mr. Moody in state collateral proceedings;
11. Dubina, Judge Joel F. - member of victim class;
12. Dyer, Judge David W. - victim;
13. Edmondson, Judge James L. - victim;
14. Evans, James H. - former Alabama Attorney General and former counsel for the State of Alabama at trial;
15. Forrester, Nathan A. - former counsel for the State of Alabama in direct appeal;
16. Freeman, Christine A. - Executive Director, Middle District of Alabama Federal Defender Program, Inc.;
17. Gardner, Bruce - former counsel for Mr. Moody on direct appeal;
18. Gillis, Jim - former counsel for Mr. Moody, pre-trial;
19. Godbold, Judge John C. - victim;

20. Goudie, Valerie - former counsel for Mr. Moody in state collateral proceedings;

21. Govan, Jr., Thomas R. - former counsel for the State of Alabama in state collateral appeal;

22. Harper, James R. - former counsel for Mr. Moody on direct appeal;

23. Hatchett, Judge Joseph W. - victim;

24. Henderson, Judge Albert J. - victim;

25. Hill, Judge James C. - victim;

26. Houts, James R. - counsel for the State of Alabama on direct appeal and current counsel for the State of Alabama and the Respondent in this proceeding;

27. Hull, Judge Frank M. - member of victim class;

28. Jacksonville, Florida NAACP - victim;

29. Jaffe, Richard - former counsel for Mr. Moody, pre-trial;

30. Johnson, Jr., Judge Frank M. - victim;

31. Johnson, Henry M. - counsel for the State of Alabama on direct appeal and state collateral proceedings and current counsel for the State of Alabama and the Respondent in this proceeding;

32. Jones, Judge Warren L. - victim;

33. Jordan, Judge Adalberto - member of victim class;

34. King, Troy - former Alabama Attorney General and former counsel for the State of Alabama in state collateral appeal;

35. Kirby, Cary - former counsel for Mr. Moody in state collateral proceedings;

36. Kravitch, Judge Phyllis A. - victim;

37. Marcus, Judge Stanley - member of victim class;

38. Martin, Judge Beverly B. - member of victim class;

39. Melko, Maryanne - former counsel for the State of Alabama at trial;

40. Mitchell, Maury - former counsel for the State of Alabama at trial;

41. Monk II, Judge Samuel H. - Specially assigned Jefferson County Circuit Judge for Mr. Moody's state collateral proceedings;

42. Morgan, Judge Lewis R. - victim;
43. Morrow, Robert E. - former counsel for the State of Alabama at trial;
44. Pryor, Jr., Judge William H. - former Alabama Attorney General and former counsel for the State of Alabama in direct appeal, and member of victim class;
45. Rhea III, Judge William H. - specially assigned Circuit Judge for Mr. Moody's state trial;
46. Robinson, Robert E. - victim;
47. Roney, Judge Paul H. - victim;
48. Schuetze, Cheryl Ann - former counsel for the State of Alabama in state collateral proceedings;
49. Sessions, Jeff - former Alabama Attorney General and former counsel for the State of Alabama at trial;
50. Siegleman, Don - former Alabama Attorney General;
51. Speagle, Regina F. - former counsel for the State of Alabama in direct appeal;

52. Stevenson, Bryan - former counsel for Mr. Moody in state collateral appeal;
53. Stewart, Sandra J. - former counsel for the State of Alabama at trial;
54. Strange, Luther - Alabama Attorney General, counsel for the State of Alabama in state collateral appeal, and current counsel for the State of Alabama and the Respondent in this proceeding;
55. Susskind, Randall - former counsel for Mr. Moody in state collateral appeal and 28 U.S.C. § 2254 proceedings;
56. Thomas, Kim T. - Commissioner for the Alabama Department of Corrections, Respondent in the underlying proceeding;
57. Tjoflat, Judge Gerald Bard - victim;
58. Turberville, L. Dan - former counsel for Mr. Moody, pre-trial;
59. Tuttle, Judge Elbert P. - victim;
60. Vance, Helen - victim;
61. Vance, Jr., Judge Robert S. - victims' son;
62. Vance, Sr., Judge Robert S. - victim;

63. White-Vance, Hon. Joyce - victims' daughter-in-law;

64. Williams, Richard R. - former counsel for Mr. Moody on direct appeal;

65. Wills, Paula - former paralegal for Mr. Moody;

66. Wilson, Judge Charles R. - member of victim class;

67. Wood, Brenda - victim.

**/s/ Anne E. Borelli**
Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

**/s/ W. Marcus Ermine**
W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

*Counsel for Walter Leroy Moody, Jr.*

## STATEMENT OF COUNSEL

We express a belief, based on reasoned and studied professional judgment, that *en banc* review is necessary to bring the panel decision into conformity with United States Supreme Court precedent and prior rulings of this Court. The panel opinion conflicts with the United States Supreme Court decisions in *Liljeberg v. Health Servs. Acquisition Corp.*[1] and *Liteky v. United States*,[2] as well as this Court's previous decisions in *Parrish v. Bd. of Comm'rs of Ala. State Bar*,[3] *United States v. State of Alabama*,[4] and *United States v. Kelly*.[5]

*En banc* review also is appropriate because this case presents two questions of exceptional importance: First, where the Court itself is an institutional victim in a case and all judges of the court have recused except the panel members, is public confidence in the judiciary jeopardized by the Court's continuing to sit on that case and failing to cause the case to be transferred to another circuit? Second, whether the panel opinion creates a circuit split on the issue of recusal of the entire circuit and

---

[1] 486 U.S. 847 (1988).

[2] 510 U.S. 540 (1994).

[3] 524 F.2d 98 (11th Cir. 1975).

[4] 828 F.2d 1532 (11th Cir. 1987).

[5] 888 F.2d 732 (11th Cir. 1989).

transfer of the case to another district court outside the circuit when the circuit court itself is the target of a campaign of violence?

**/s/ Anne E. Borelli**
Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

**/s/ W. Marcus Ermine**
W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

*Counsel for Walter Leroy Moody, Jr.*

## TABLE OF CONTENTS

Certificate of Interested Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Statement of Counsel.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Relevant Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. *En banc* rehearing is necessary because the panel opinion is contrary to United States Supreme Court precedent in *Liljeberg* and *Liteky*, as well as prior Eleventh Circuit precedent in *Parrish*, *State of Alabama*, and *Kelly*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. *En banc* rehearing should be granted because this case involves two questions of exceptional importance. . . . . . . . . . . . . . . . . . . . . . . 6

A. Where the Court of Appeals itself is an institutional victim in a case and all judges of the Court have recused except the panel members, is public confidence in the judiciary jeopardized by the Court's continuing to sit on that case and failing to cause the case to be transferred to another circuit?. . . . . . . . . . 6

B. Whether the panel opinion creates a circuit split on the issue of recusal of the entire circuit and transfer of the case to another district court outside the circuit when the circuit court itself is the target of a

campaign of violence?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. The panel opinion left incomplete certain facts justifying recusal of the panel, as well as facts supporting transfer of the case to a district court outside the bounds of the Eleventh Circuit.. . . . . . . . . 10

IV. Mr. Moody's right to procedural due process is being violated because he cannot obtain *en banc* rehearing due to the recusal of all judges of this Court except the three judges who issued the *per curiam* panel opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Panel Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

CASES

*Ake v. Oklahoma*, 470 U.S. 68 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bell v. Burson*, 402 U.S. 535 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clemens v. U.S. Dist. Court for the Cent. Dist. of Cal.*,
428 F.3d 1175 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Evitts v. Lucey*, 469 U.S. 387 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hinman v. Rogers*, 831 F.2d 937 (10th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). . . . . i, 1, 3-5, 7

*Liteky v. United States*, 510 U.S. 540 (1994). . . . . . . . . . . . . . . . . . . . . . . . i, 1, 3-4

*In re Nettles*, 394 F.3d 1001 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Nichols v. Alley*, F.3d 347 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Parrish v. Bd. of Comm'rs of Ala. State Bar*,
524 F.2d 98 (11th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 1, 4-5

*Sanders v. Allen,* 58 F. Supp. 417 (S.D. Cal. 1944). . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tucker v. Kerner*, 186 F.2d 79 (7th Cir. 1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Union Leader Corp.*, 292 F.2d 381 (1st Cir. 1961). . . . . . . . . . . . . . . . . . . 5-6

*United States v. Burger*, 964 F.2d 1065 (10th Cir. 1992). . . . . . . . . . . . . . . . . . . . 5

*United States v. Jordan*, 49 F.3d 152 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kelly*, 888 F.2d 732 (11th Cir. 1989). . . . . . . . . . . . . . . . i, 1, 3-5

*United States v. Nettles*, 476 F.3d 508 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. State of Alabama*, 828 F.2d 1532 (11th Cir. 1987). . . . . .  i, 1, 4-5

*United States v. Steele*, 147 F.3d 1316 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . 13

STATUTES

28 U.S.C. § 46(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 144. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

28 U.S.C. § 291(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 292(d).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 455. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OTHER AUTHORITIES

H.R. REP. NO. 93-1453 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Eleventh Circuit Internal Operating Procedure 8, "Effect of Recusal or Disqualification on Number of Votes Required," under FED. R. APP. P. 35.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF THE ISSUES

I. *En banc* rehearing is necessary because the panel opinion is contrary to United States Supreme Court precedent in *Liljeberg* and *Liteky*, as well as prior Eleventh Circuit precedent in *Parrish*, *State of Alabama*, and *Kelly*.

II. *En banc* rehearing should be granted because this case involves two questions of exceptional importance:

A. Where the Court of Appeals itself is an institutional victim in a case and all judges of the Court have recused except the panel members, is public confidence in the judiciary jeopardized by the Court's continuing to sit on that case and failing to cause the case to be transferred to another circuit?

B. Whether the panel opinion creates a circuit split on the issue of recusal of the entire circuit and transfer of the case to another district court outside the circuit when the circuit court itself is the target of a campaign of violence?

III. The panel opinion left incomplete certain facts justifying recusal of the panel, as well as facts supporting transfer of the case to a district court outside the bounds of the Eleventh Circuit.

IV. Mr. Moody's right to procedural due process is being violated because he cannot obtain *en banc* rehearing due to the recusal of all judges of this Court except the three judges who issued the *per curiam* panel opinion.

## RELEVANT PROCEDURAL HISTORY

On December 21, 2012, Mr. Moody filed in the United States District Court for the Northern District of Alabama a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his Alabama capital murder conviction and death sentence related to the mail bomb murder of then-sitting Eleventh Circuit Judge Robert Vance.

After Mr. Moody's three requests for recusal of Northern District of Alabama Judge Coogler were denied, he filed a Petition for Writ of Mandamus in this Court on June 13, 2013. He then filed a Motion to Recuse the Eleventh Circuit on August 30, 2013. Following oral argument, in a published opinion issued on January 10, 2014, this Court denied both the Motion to Recuse the Eleventh Circuit and the Petition for Writ of Mandamus.[6]

## STATEMENT OF RELEVANT FACTS

Mr. Moody was convicted in the Circuit Court of Jefferson County, Alabama, of capital murder for the murder of Judge Vance, a then-active judge of the Eleventh Circuit. As part of its case, the State sought to show Mr. Moody constructed and mailed the pipe bomb that killed Judge Vance, the pipe bomb that killed Georgia attorney Robert Robinson, and two additional pipe bombs that were disarmed–one at the Eleventh Circuit courthouse in Atlanta, Georgia, and one at the Jacksonville, Florida, NAACP.

At trial, the State presented evidence that, months before those bombs were mailed, Mr. Moody, posing as a group called "Americans for a Competent Federal Judiciary," sent "Declaration of War" letters to news media in various locations

[6] *In re Walter Leroy Moody, Jr.*, No. 13-12657, 2014 WL 92232 (11th Cir. Jan. 10, 2014) (per curiam) (attached at page 17).

proclaiming animosity toward all judges within the Eleventh Circuit, accepting responsibility for future bombings, and complaining about the Eleventh Circuit's "callous disregard for justice." The State also presented evidence that, after Judge Vance's murder, Mr. Moody sent death threat letters to seventeen judges of the Eleventh Circuit.

Before he was tried in Alabama state court for capital murder, Mr. Moody was prosecuted in federal court where the Northern District of Georgia recused itself because "there exists the possibility that 'an objective, disinterested lay observer fully informed of the facts. . . would entertain a significant doubt about the judge's impartiality,'. . . if any one of us were to preside over the trial of this case."[7] The federal murder trial was conducted in the District of Minnesota by a senior judge of that district. The Fourth Circuit ultimately heard the appeal because the Eleventh Circuit had previously recused itself "from participating in this case and in any other cases relating to the investigation of the murder of the Honorable Robert S. Vance in which Walter Leroy Moody is a party."

## ARGUMENT

### I. *En banc* rehearing is necessary because the panel opinion is contrary to United States Supreme Court precedent in *Liljeberg* and *Liteky*, as well as

[7] Order, *United States v. Moody*, No. 1:90-CR-393 (N.D. Ga. Feb. 22, 1991) (quoting *United States v. Kelly*, 888 F.2d 732, 744-45 (11th Cir. 1989)).

**prior Eleventh Circuit precedent in *Parrish*, *State of Alabama*, and *Kelly*.**

In *Liljeberg v. Health Servs. Aquisition Corp.*, the United States Supreme Court recognized that, under 28 U.S.C. § 455(a), the previously employed "duty to sit" standard is no longer applicable.[8] Instead, the Court held that that former, subjective test had been abrogated by an objective test[9] wherein the judge's "scienter is not an element."[10] The Court summarized these considerations as follows: "[R]ecusal is required even when a judge lacks actual knowledge of the facts indicating his interest or bias in the case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge."[11] The Court reiterated the objective test in *Liteky v. United States*.[12]

This Court also has recognized the abrogation of the duty to sit standard. For example, in *Parrish v. Bd. of Comm'rs of Ala. State Bar*,[13] *United States v. State of*

---

[8] 486 U.S. 847, 871 (1988) (Rehnquist, C.J., dissenting).

[9] *Id.* at 858 n.7 (citing legislative history).

[10] *Id.* at 859.

[11] *Id.* at 860-61.

[12] 510 U.S. 540, 548 (1994) (". . . § 455(a) proscribes all partiality, not merely the 'personal' sort.").

[13] 524 F.2d 98 (11th Cir. 1975).

*Alabama*,[14] and *United States v. Kelly*,[15] this Court recognized that 28 U.S.C. § 455(a) "did away with the 'duty to sit' so the benefit of the doubt is now to be resolved in favor of recusal."[16]

The panel opinion, while stating that doubts are to be resolved in favor of recusal, quotes *United States v. Burger*, a Tenth Circuit case, for the proposition that "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is."[17] *Burger* pulled this quote from a pre-*Liljeberg* Tenth Circuit case.[18] The quoted standard can be traced back to a 1961 First Circuit case, *In re Union Leader Corp.*[19] That case involved 28 U.S.C.

---

[14] 828 F.2d 1532 (11th Cir. 1987), *overruled on other grounds by Lussier v. Dugger*, 904 F.2d 661, 664 (11th Cir. 1990).

[15] 888 F.2d 732 (11th Cir. 1989).

[16] *State of Alabama*, 828 F.2d at 1540; *see also Parrish*, 524 F.2d at 103 ("[T]he language of s 455(a) was intended to displace the subjective 'in the opinion of the judge' test for recusal under the old statute, and the so-called 'duty to sit decisions.'"); *Kelly*, 888 F.2d at 744 ("Section 455 does away with the old 'duty to sit' doctrine and requires judges to resolve any doubts they may have in favor of disqualification.").

[17] *In re Moody*, 2014 WL 92232, at *3 (quoting *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992)).

[18] *Burger*, 964 F.2d at 1070 (quoting *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987)).

[19] 292 F.2d 381, 391 (1st Cir. 1961).

§ 144, which deals with allegations of personal bias made against a judge and supported by an affidavit.[20] That statute is not applicable in this case and neither is its accompanying "duty to sit" standard.

The panel opinion concludes by stating, "We take Judge Coogler at his word that he will be able to rule on Mr. Moody's habeas corpus petition fairly and impartially. . . ."[21] This exemplifies the subjective standard employed by the panel opinion instead of the objective standard required by the Supreme Court and prior Eleventh Circuit precedent. The panel opinion falls into the same error in addressing the panel's recusal by citing subjective factors like length of judicial service and lack of personal and professional connections between panel members and Judge Vance.[22] Rehearing *en banc* is necessary to bring the panel opinion into conformity with Supreme Court and Eleventh Circuit precedent.

## II. *En banc* rehearing should be granted because this case involves two questions of exceptional importance.

### A. Where the Court of Appeals itself is an institutional victim in a case and all judges of the Court have recused except the panel members, is public confidence in the judiciary

[20] *Id.* (citing *Tucker v. Kerner*, 186 F.2d 79, 85 (7th Cir. 1950); *Sanders v. Allen,* 58 F. Supp. 417, 420 (S.D. Cal. 1944)).

[21] *In re Moody*, 2014 WL 92232, at *7.

[22] *Id.* at *5.

**jeopardized by the Court's continuing to sit on that case and failing to cause the case to be transferred to another circuit?**

The purpose of 28 U.S.C. § 455(a) is "to promote public confidence in the integrity of the judicial process"[23] and "to avoid even the appearance of partiality."[24] "[A]n appearance of partiality is created even though no actual partiality exists. . . because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible."[25]

Mr. Moody is under a death sentence for murdering a sitting judge of this Court. The State argued Mr. Moody had "declared war" on this Court due to its perceived "incompetence." The trial included testimony from Judge Lewis Morgan whose name and address were given as the return address on the mail bomb sent to Judge Vance. The State presented evidence attempting to prove Mr. Moody sent a mail bomb to this Court, as well as threatening letters to each judge of this Court at chambers throughout the states of this Circuit. One currently sitting judge and six current senior judges received a death threat letter. Two current judges of this Court, including the current chief judge, took part in prosecuting Mr. Moody and obtaining

---

[23] *Liljeberg*, 486 U.S. at 860 (citing H.R. REP. NO. 93-1453, p. 5 (1974)).

[24] *Id.* (citation omitted).

[25] *Id.*

his death sentence. The recent oral argument in this matter took place in a courtroom adjacent to a memorial honoring Judge Vance. This Court has a permanent reminder of Judge Vance on its flag in the form of a red stripe. Finally, all but three members of this Court have opted to recuse.

Recusal of this Court is necessary here to promote confidence in the judiciary. This Court is an institutional victim: it received a mail bomb and death threat letters were sent to each of its judges. The Court rightly continues to champion publicly the memory and legacy of Judge Vance. But these considerations necessitate recusal of both this Court and its constituent district courts in the interest of appearing impartial because "an observer of our judicial system is less likely to credit judges' impartiality than the judiciary."[26]

### B. Whether the panel opinion creates a circuit split on the issue of recusal of the entire circuit and transfer of the case to another district court outside the circuit when the circuit court itself is the target of a campaign of violence?

In *In re Nettles*, the Seventh Circuit granted the defendant's petition for writ of mandamus, ordering the recusal of all judges of the Northern District of Illinois, and *sua sponte* recused itself from further considering the defendant's case.[27] There,

---

[26] *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995).

[27] 394 F.3d 1001, 1003 (7th Cir. 2005).

the defendant was facing prosecution for attempting to bomb the federal building and courthouse that housed both the Northern District of Illinois and the Seventh Circuit.[28] Although none of the other district court judges or courthouses within the bounds of the Seventh Circuit were threatened by the defendant's plot, the prosecution was transferred to the Southern District of New York, and the subsequent appeal was heard by judges of the Sixth Circuit.[29] In its holding, the Seventh Circuit stated: "We do not suggest that [the district court judge] would in fact be prejudiced against Nettles. The issue is appearances. With reluctance we conclude that Nettles is entitled to a writ of mandamus directing the recusal of [the judge] and any other judge of the Northern District."[30]

Contrary to the Seventh Circuit's reasoning and holding, the panel opinion here extracted from *Nettles* the proposition that "where a defendant is charged with trying to blow up (or otherwise damage) a federal courthouse, judges residing in that courthouse at the time of the alleged plot and judges belonging to the court based in that courthouse must recuse from cases involving that defendant because such judges

---

[28] *Id.* at 1002.

[29] *United States v. Nettles*, 476 F.3d 508, 512 (7th Cir. 2007). The mechanism for "transferring" such cases is statutory: 28 U.S.C. § 291(a) (dealing with Circuit Courts of Appeal) and 28 U.S.C. § 292(d) (dealing with district courts).

[30] *In re Nettles*, 394 F.3d at 1003.

were potential victims of the alleged attack."[31] The panel opinion failed to consider that Nettles's prosecution was transferred outside the Seventh Circuit even though only one district court was targeted by the defendant's plot. The panel relied upon the Ninth Circuit's opinion in *Clemens v. U.S. District Court for the Central District of California*, which had also failed to consider the ultimate outcome in *Nettles*.[32] Moreover, in *Clemens*, the Ninth Circuit cites to a judge's "'strong. . . duty to sit,'"[33] which is a standard that has been rejected by the Supreme Court and the Eleventh Circuit as discussed above in Section I. The panel opinion, then, is at odds with Seventh Circuit precedent and misapplies Ninth Circuit precedent. Therefore, *en banc* rehearing is necessary.

## III. The panel opinion left incomplete certain facts justifying recusal of the panel, as well as facts supporting transfer of the case to a district court outside the bounds of the Eleventh Circuit.

The panel opinion states that "[t]he only fact distinguishing this panel from a randomly-assigned panel comprised of judges from another circuit is that we happen to be assigned to the Eleventh Circuit. . . ."[34] This statement fails to give import to

---

[31] *In re Moody*, 2014 WL 92232, at *4.

[32] 428 F.3d 1175, 1179 (9th Cir. 2005).

[33] *Id.* (quoting *Nichols v. Alley*, F.3d 347, 351 (10th Cir. 1995)).

[34] *In re Moody*, 2014 WL 92232, at *5.

those facts stated above in section II(A), especially the following: The panel sits in the very courthouse where a bomb attributed to Mr. Moody was delivered. The panel works daily with five judges who have all recused themselves voluntarily because of connections to this case. The oral argument in this case took place in a courtroom a few feet from a memorial honoring Judge Vance. This Court has a permanent red stripe on its flag in remembrance of Judge Vance–a fact pointed out by a panel member during the oral argument. These facts distinguish the panel from any panel in any other circuit.

Moreover, the panel opinion mentions that "none of the three judges on this panel sat on the Eleventh Circuit. . . at the time of Judge Vance's death. . . . [A]lthough Judges Wilson and Jordan served as law clerks to the Fifth Circuit and Eleventh Circuit judges respectively, they did so before Judge Vance's murder (Judge Wilson in 1980 and Judge Jordan in 1987-88)."[35] While the opinion goes on to mention that no member of the panel had a "close personal or professional relationship with Judge Vance. . . [,]" the opinion fails to evaluate how Judge Wilson's and Judge Jordan's federal judicial clerkships would be viewed by a fully-informed, objective lay observer. Judge Wilson's clerkship with the Fifth Circuit in 1980 overlapped with Judge Vance's service on that court. Judge Jordan's clerkship

[35] *Id.* at *3.

with Eleventh Circuit Judge Thomas Clark in 1987-88 overlapped with Judge Vance's tenure with this Court. Additionally, Judge Clark received a death threat letter in 1989 purportedly from Mr. Moody and subsequently recused himself from Mr. Moody's case along with the rest of the Eleventh Circuit judges.

Mr. Moody is not claiming that the panel cannot be impartial as a result of these connections to the Eleventh Circuit institution, its judges, and history. But Mr. Moody asserts that these continuing connections meet the objective standard for recusal in order to protect the public's confidence in the impartiality of the judiciary.

## IV. Mr. Moody's right to procedural due process is being violated because he cannot obtain *en banc* rehearing due to the recusal of all judges of this Court except the three judges who issued the *per curiam* panel opinion.

The three judges who joined in the *per curiam* panel opinion are the only three judges of the Eleventh Circuit who have not recused in this case.[36] There are currently eight active judges on the Court. Judge Tjoflat is recused from this case by virtue of a pre-existing order entered in 1990.[37] Chief Judge Carnes and Judge Pryor have recused due to their prior employment with the Alabama Attorney General's Office, which obtained Mr. Moody's Alabama murder conviction and death sentence.[38]

---

[36] *Id.* at *7 n.1.

[37] *Id.*

[38] *Id.* at *7 n.1 & *3.

Judges Hull and Marcus have recused for reasons not stated publicly.[39]

As a result of this unprecedented, extraordinary circumstance, Mr. Moody must request rehearing *en banc* from only those judges who joined in the *per curiam* decision denying him relief.[40] Even if *en banc* rehearing were granted, it would amount to mere panel rehearing since only the panel members have not recused.

This conundrum is contrary to the intent behind the law of the Eleventh Circuit "that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision."[41] Moreover, it is possible that, if Judges Hull and Marcus had not already recused, each could have participated in the *en banc* vote and, as can be surmised from their recusal decisions, may have agreed that the Eleventh Circuit should recuse in this case.

The United States Supreme Court has held that the "procedures used in deciding appeals must comport with the demands of the Due Process [Clause]."[42] Yet, the Court has also recognized that a "procedural rule that may satisfy due process in

---

[39] *Id.* at *7 n.1.

[40] 28 U.S.C. § 46(c); Eleventh Circuit Internal Operating Procedure 8, "Effect of Recusal or Disqualification on Number of Votes Required," under FED. R. APP. P. 35.

[41] *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998).

[42] *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).

one context may not necessarily satisfy procedural due process in every case."[43] Here, Mr. Moody has essentially run into a procedural wall that will deny him due process. While any other petitioner would have recourse to the *en banc* Court, Mr. Moody's meaningful access to justice is precluded.[44] He is unable to obtain *en banc* rehearing or even a proper vote to determine the necessity of *en banc* rehearing before any judges other than the panel that has already ruled against him.

Mr. Moody's right to due process is denied because he is forced to seek a vote on rehearing *en banc* from the same *per curiam* panel that has already ruled against him. Even if this case were approved for *en banc* rehearing, it would be heard by only the *per curiam* panel. Mr. Moody's inability to obtain meaningful *en banc* review runs afoul of his right to procedural due process. And the Court's basis for invoking *en banc* review is frustrated because the panel decision cannot be overruled despite indications that a true *en banc* court might agree with Mr. Moody's recusal arguments.

## CONCLUSION

The panel opinion is contrary to United States Supreme Court and prior Eleventh Circuit precedent. The opinion inappropriately invoked and applied the

---

[43] *Bell v. Burson*, 402 U.S. 535, 539 (1971).

[44] *See Ake v. Oklahoma*, 470 U.S. 68, 77 (1985).

subjective "duty to sit" standard even though that standard has been abrogated in favor of an objective standard. The panel opinion jeopardizes public confidence in the judiciary and creates a circuit split with the Seventh Circuit. Finally, the panel opinion fails to account for facts that would create an appearance of partiality if considered by an informed, objective observer.

The panel opinion, then, should be reviewed by the Court *en banc* and vacated. However, in this extraordinary circumstance, only the *per curiam* panel members have not recused. So, Mr. Moody's due process is being violated because the procedural rules preclude meaningful access to justice for him.

**/s/ Anne E. Borelli**
Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

**/s/ W. Marcus Ermine**
W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

*Counsel for Walter Leroy Moody, Jr.*

## CERTIFICATE OF SERVICE

We hereby certify that, on January 31, 2014, we served a true and correct copy of the foregoing to the following opposing counsel and the presiding District Court judge, in accordance with 11th Cir. R. 35-5(j):

James R. Houts
Asst. Attorney General
501 Washington Avenue
Montgomery, Alabama 36130

Hon. L. Scott Coogler
U.S. District Court Judge
2005 University Blvd.
Tuscaloosa, Alabama 35401

**/s/ Anne E. Borelli**

Anne E. Borelli
Alabama Bar No. ASB-2419-A52B

**/s/ W. Marcus Ermine**

W. Marcus Ermine
Georgia Bar No. 321851

Federal Defenders
Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Telephone (334) 834-2099
Fax (334) 834-0353
E-mail: Anne_Borelli@fd.org
E-mail: marcus_w_ermine@fd.org

*Counsel for Walter Leroy Moody, Jr.*

**PANEL OPINION**

*In re Walter Leroy Moody, Jr.*, No. 13-12657, 2014 WL 92232
(11th Cir. Jan. 10, 2014) (per curiam)

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 13-12657

---

D.C. Docket No. 2:12-cv-04139-LSC

In re WALTER LEROY MOODY, JR.,

Petitioner.

---

Appeal from the United States District Court
for the Northern District of Alabama

---

**(January 10, 2014)**

Before WILSON, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Walter Leroy Moody, Jr., convicted under federal and state law for the 1989 murder of Eleventh Circuit Judge Robert S. Vance, has petitioned for a writ of mandamus ordering the recusal of District Judge L. Scott Coogler, who was randomly assigned to hear his federal petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, and directing the transfer of this matter to a district judge outside the bounds of the Eleventh Circuit. After filing his mandamus petition,

Mr. Moody has separately moved for the recusal of all judges on this court, requesting that we likewise transfer his mandamus petition to a different circuit.

At bottom, Mr. Moody argues that Judge Vance's murder, which occurred more than two decades ago, necessitates the recusal of all circuit judges on, and all district and magistrate judges within, the Eleventh Circuit. According to Mr. Moody, allowing any such judges to rule on his habeas corpus petition would create an appearance of partiality within the meaning of 28 U.S.C. § 455(a), and also violate § 455(b)(4) by allowing them to sit on a case in which they have an "interest that could be substantially affected by the outcome." Having analyzed the unique facts and circumstances of this matter, and with the benefit of oral argument, we deny Mr. Moody's petition and motion.

## I

In 1972, a federal jury in Georgia convicted Mr. Moody of possessing an unregistered destructive device. *See United States v. Moody*, 474 F.2d 1346 (5th Cir. 1973) (*Moody I*) (table decision affirming conviction). After his attempts to set aside the conviction proved unsuccessful, *see, e.g.*, *Moody v. United States*, 874 F.2d 1575 (11th Cir. 1989) (*Moody II*) (affirming denial of coram nobis relief), Mr. Moody mailed a tear-gas package bomb to the NAACP Regional Office in Atlanta. That bomb exploded on August 21, 1989, "engulf[ing] NAACP employees in clouds of choking gas." *United States v. Moody*, 977 F.2d 1425,

1428 (11th Cir. 1992) (*Moody V*). Mr. Moody also sent out a "Declaration of War" to the Eleventh Circuit and to television stations around the country, accusing the Circuit of deliberate misconduct and rank bias. *Id.*

As detailed in *Moody V*, 977 F.2d at 1428-29, Mr. Moody then built four powerful package bombs. He mailed the first of these bombs to Judge Vance in Alabama, with the return address of another Eleventh Circuit judge. Judge Vance was killed on December 16, 1989, when he opened the package containing the bomb, and his wife was seriously injured by the blast. The second of the bombs killed civil rights attorney Robert Harrison in Savannah, Georgia, two days later. A security officer intercepted the third bomb at the Eleventh Circuit headquarters in Atlanta, and the fourth bomb was received but not opened by employees of the Jacksonville NAACP office because they had heard about the other bombings.

In 1990, the government obtained an indictment against Mr. Moody, charging him with numerous federal offenses related to the murders of Judge Vance and Mr. Robinson. All judges then sitting on the Eleventh Circuit entered an order recusing themselves from all cases "relating to the investigation of the murder of [Judge] Vance" in which Mr. Moody was a party. *See United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992) (*Moody IV*).[1]

[1] That recusal order is still in effect for all judges who were members of the Eleventh Circuit at that time (i.e., Circuit Judges Tjoflat, Fay, Hill, Anderson, Kravitch, Cox, and Edmondson). In addition, several other current members of the Eleventh Circuit (Chief Judge

All district judges in the Northern District of Georgia also recused themselves, and as a result Chief Justice Rehnquist designated Judge Edward Devitt from the District of Minnesota to preside over Mr. Moody's case. Judge Devitt granted Mr. Moody's motion for a change of venue, and moved the trial to St. Paul. *See United States v. Moody*, 762 F. Supp. 1485 (N.D. Ga. 1991) (*Moody III*). After a jury convicted Mr. Moody of 71 counts, Judge Devitt sentenced him to seven life terms and 400 years, to be served concurrently with each other and consecutively to a 15-year sentence imposed in the Middle District of Georgia on separate perjury and obstruction charges related to Mr. Moody's attempts to overturn his 1972 conviction. On appeal, the Eleventh Circuit – with a panel comprised of three judges from the Fourth Circuit – affirmed Mr. Moody's convictions and sentences in *Moody V*.[2]

---

Carnes and Judges Hull, Marcus, and Pryor) have since voluntarily recused themselves from participation in any of Mr. Moody's cases. At this time, therefore, the only judges in the Eleventh Circuit who have not recused themselves from Mr. Moody's cases are the members of this panel.

[2] After several judges in the Middle District of Georgia recused themselves, Chief Judge Tjoflat designated Judge Anthony Alaimo from the Southern District of Georgia to preside over Mr. Moody's perjury/obstruction of justice case. Mr. Moody appealed his convictions in that case, but the Eleventh Circuit – with the same panel of Fourth Circuit judges who heard *Moody V* – affirmed in *Moody IV*. One of the arguments Mr. Moody raised on appeal in *Moody IV* was that Judge Alaimo should have recused himself "because of the appearance of bias arising from [Mr.] Moody's (then alleged) involvement in the Vance and Robinson murders." 977 F. 2d at 1423. The panel in *Moody IV* rejected the argument, finding no abuse of discretion in Judge Alaimo's reasoning that "the purported basis for . . . bias was 'simply too attenuated to raise even a reasonable appearance of impropriety.'" *Id.*

The State of Alabama then charged Mr. Moody with the capital murder of Judge Vance. A jury found Mr. Moody guilty, and the state trial court, following the jury's 11-1 recommendation, sentenced him to death. The Alabama Court of Criminal Appeals affirmed, and the Alabama Supreme Court denied review. *See Moody v. State*, 888 So. 2d 532 (Ala. Crim. App. 2003), *writ denied*, 888 So. 2d 605 (Ala. 2004) (*Moody VI*). When his attempt to obtain post-conviction relief in the Alabama courts failed, *see Moody v. State*, 95 So. 3d 827 (Ala. Crim. App. 2011) (*Moody VII*), Mr. Moody filed a petition for a writ of habeas corpus in the Northern District of Alabama. The petition was randomly assigned to Judge Coogler, who denied Mr. Moody's motion for recusal.

## II

In relevant part, 28 U.S.C. § 455(a) provides that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In keeping with the aim of "'promot[ing] confidence in the judiciary by avoiding even the appearance of impropriety whenever possible,'" *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)), recusal under § 455(a) turns on "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States*

*v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013) (citations and internal quotation marks omitted).

Under § 455(b)(4), recusal is required whenever a judge has "any . . . interest that could be substantially affected by the outcome of the proceeding." The phrase "any . . . interest that could substantially be affected" is not statutorily defined, and "it is not easy to conclude what [it] means." *In re Virginia Electric & Power Co.*, 539 F.2d 357, 367 (4th Cir. 1976). We have held, however, in a case alleging improper transactions in a customer's airline frequent flyer program, that § 455(b)(4) did not require recusal of Eleventh Circuit judges who happened to belong to the same program. *See Delta Airlines v. Sasser*, 127 F.3d 1296, 1297 (11th Cir. 1997) (explaining in part that the litigation would not "jeopardize the viability" of the frequent flyer program as a whole). *Cf. Liljeberg*, 486 U.S. at 867 (district judge violated § 455(b)(4) by failing to recuse after learning that he was a member of the board of trustees of a university with an interest in the outcome of the proceedings before him).

"[A]ny doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1321. Nevertheless, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (internal punctuation and citation omitted). Indeed, "a judge, having been assigned to a case, should not

recuse himself on unsupported, irrational, or highly tenuous speculation." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986).

**III**

We first address Mr. Moody's motion for recusal of the members of this panel. Mr. Moody argues that recusal of all Eleventh Circuit judges is required because his crimes in 1989 targeted not only Judge Vance, but also the Eleventh Circuit as an institution (as well as all of its then-constituent judges). Mr. Moody notes that the judges of the Eleventh Circuit received threatening letters contemporaneously with Judge Vance's murder, that a bomb was delivered to the Eleventh Circuit's headquarters in Atlanta, that Judge Vance maintained close relationships with a number of circuit colleagues, and that two current Eleventh Circuit judges participated in his prosecution. Such facts, Mr. Moody maintains, would lead a "objective, disinterested, lay observer" to harbor a "significant doubt" about the Eleventh Circuit's ability to decide this matter fairly and therefore necessitate recusal under § 455(a). *See Scrushy*, 721 F.3d 1303 (internal quotation marks omitted).

**A**

Recusal decisions under "§ 455(a) are extremely fact driven and 'must be judged on their unique facts and circumstances more than by comparison to

situations considered in prior jurisprudence.'" *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)). Given the peculiar scenario here, the facts that Mr. Moody relies on do not warrant recusal under § 455(a). First, none of the three judges on this panel sat on the Eleventh Circuit (or were members of the federal judiciary) at the time of Judge Vance's death or of the contemporaneous bomb threat to the Eleventh Circuit's headquarters.[3] Second, although Judges Wilson and Jordan served as law clerks to Fifth Circuit and Eleventh Circuit judges respectively, they did so before Judge Vance's murder (Judge Wilson in 1980 and Judge Jordan in 1987-88). Third, no judge on this panel enjoyed a close personal or professional relationship with Judge Vance or with any member of his immediate family. Fourth, even though two current Eleventh Circuit judges took part in Alabama's prosecution of Mr. Moody, those two judges have recused, so their participation is not an issue. In short, the only connection between the members of this panel and Mr. Moody's current case is our current service on the Eleventh Circuit and Judge Vance's service on the same court at the time of his death in 1989. And that is not enough.

Mr. Moody relies heavily on the Seventh Circuit's sua sponte self-recusal in *In re Nettles*, 394 F.3d 1001 (7th Cir. 2005), but we think that case does not control here. The petitioner in *Nettles* was arrested in 2004 after he allegedly sold

---

[3] Judge Wilson began his service on the Eleventh Circuit in 1999. Judge Martin and Judge Jordan followed more than a decade later, in 2010 and 2012 respectively.

explosives to an undercover FBI agent posing as a terrorist, with the aim of destroying the Dirksen Courthouse in downtown Chicago, a building which houses the District Court for the Northern District of Illinois and is the headquarters of the Court of Appeals for the Seventh Circuit. *Id.* at 1002-03. Concluding that a reasonable observer might believe that a district judge stationed in the Dirksen Courthouse would want the petitioner to be convicted and serve a lengthy sentence, the Seventh Circuit granted the petitioner mandamus relief and ordered the recusal of all district judges in the Northern District of Illinois. *Id*. at 1003. Taking that logic one step further, the Seventh Circuit sua sponte recused itself from hearing any further appeals in the petitioner's case, reasoning that "the appellate judges in [the Dirksen] [C]ourthouse are as menaced by an Oklahoma City style attack as the district judges." *Id.*

The Ninth Circuit distinguished *Nettles* in *Clemens v. U.S. District Court for the Central District of California*, 428 F.3d 1175, 1179-80 (9th Cir. 2005). In *Clemens*, the defendant was charged with making threats (with intent to extort, assault, murder, or inflict harm) against three district judges who had handled his *pro se* cases in the Central District of California. He filed a mandamus petition asking for the disqualification of all judges in the Central District from his criminal case. The Ninth Circuit denied relief under § 455(a), explaining that "[w]here other circuits have required recusal, the recused judge was an intended victim of

the alleged crime. In *Nettles*, all the judges of the district could have fairly been viewed as intended victims of the charged offense. There is no such allegation in this case, either toward the assigned judge or the entire bench. Nor could a reasonable person draw an inference of a threat against the entire bench." *Id.* at 1179. The Ninth Circuit rejected the defendant's argument that, given the type of crime charged, no judge in the Central District could be properly assigned to his criminal case: "Clemens argues that no judge of the district could preside impartially over his trial, given the nature of the allegations. However, we have previously rejected an attempt to disqualify a judge based on his relationship with the victim." *Id.* at 1180.

As we read it, *Nettles* stands for the proposition that, where a defendant is charged with trying to blow up (or otherwise damage) a federal courthouse, judges residing in that courthouse at the time of the alleged plot and judges belonging to the court based in that courthouse must recuse from cases involving that defendant because such judges were potential victims of the alleged attack. *See also Nichols*, 71 F.3d at 352 (granting mandamus relief and ordering recusal of district judge whose courthouse and chambers were damaged by bomb allegedly set off by defendants at nearby federal building). Here, consistent with the rationale of *Nettles*, those judges sitting on the Eleventh Circuit at the time of Judge Vance's murder have recused themselves from hearing all cases relating to that murder in

which Mr. Moody is a party. *See Moody IV*, 977 F.2d at 1423. So have all other Eleventh Circuit judges, save for the members of this panel, as explained in footnote 2.

The narrow question then, is whether, 24 years after Judge Vance's murder, recusal is required for current Eleventh Circuit judges who had no personal connection or relationship with Judge Vance and who were not members of the Circuit at the time. The answer, we think, is no. The only fact distinguishing this panel from a randomly-assigned panel comprised of judges from another circuit is that we happen to be assigned to the Eleventh Circuit, on which Judge Vance sat at the time of his death in 1989. We conclude that under the unique facts of this case such a tenuous connection would not, standing alone, raise significant doubt in the mind of an informed, objective, and disinterested lay observer about our ability to fairly decide cases involving Mr. Moody. *See Clemens*, 428 F.3d at 1179-80.

To the extent that our hypothetical lay observer might have a possible doubt about the ability of any federal judge to fairly adjudicate the habeas corpus petition of a defendant convicted of murdering another federal judge, such a doubt would be based on the notion that federal judges might tend to view an attack on one as an attack on all. But such a doubt would extend to all federal judges – regardless of their circuit or district – and would, if disqualifying, prevent Mr. Moody from having a federal forum in which to obtain review of his state capital conviction and

sentence. *Cf. Bolin v. Story*, 225 F.3d 1234, 1238 (11th Cir. 2000) ("Under [the] 'rule of necessity,' a judge is not disqualified due to a personal interest if there is no other judge available to hear the case.").

**B**

Mr. Moody also contends that all judges currently sitting on the Eleventh Circuit are part of the "victim class" for the crimes of which he was convicted, and must recuse themselves because they have an "interest that could be substantially affected by the outcome of the proceeding" within the meaning of § 455(b)(4). We disagree.

As we have noted, there is little precedent on the meaning of the phrase "any . . . interest that could be substantially affected by the outcome." One commentator, however, has suggested that the word "substantial" in that phrase "should probably be read to depend on the interaction of two variables: the remoteness of the interest and its extent or degree." Note, *Disqualification of Judges and Justices in the Federal Courts*, 86 HARV. L. REV. 736, 753 (1973) (cited with approval in *In re Virginia Electric & Power Co.*, 539 F.2d at 368). That formulation makes sense to us, and we therefore use it in our analysis. *See* 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3547 (3d ed. 2008) ("[T]he courts appear to

weigh two factors in deciding whether to recuse under [§ 455(b)(4)]: the remoteness of the interest and its extent or degree.”).

As previously discussed, none of the members of this panel had a close professional or personal relationship with Judge Vance or his family, sat on the Eleventh Circuit in 1989, or were members of the federal judiciary at that time. Our interest, if there is one, is remote and weak, such that it is not disqualifying, and will not, in any event, be substantially affected by the outcome of Mr. Moody’s habeas corpus proceeding. We cannot conclude that we became prospective members of the so-called “victim class” upon our confirmation to the Eleventh Circuit 10, 21, and 23 years after Judge Vance’s death, and we are not aware of any authority suggesting that the murder of a judge requires the recusal of all future judges on the victim’s court for time immemorial.

## IV

Having determined that we need not recuse ourselves from this matter, we now turn to Mr. Moody’s mandamus petition. We conclude that Mr. Moody is not entitled to the recusal of Judge Coogler.

We ordinarily review a district judge’s decision not to recuse for abuse of discretion. *See Scrushy*, 721 F.3d at 1303. Because Mr. Moody has petitioned for mandamus, however, our review of Judge Coogler’s failure to recuse is even more stringent. The Supreme Court has instructed that “the remedy of mandamus is a

drastic one, to be invoked only in extraordinary situations" and "only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34-35 (1980). *See also In re Lopez-Lukis*, 113 F.3d 1187, 1187-88 (11th Cir. 1997) ("[M]andamus is an extraordinary remedy, which is available only to correct a clear abuse of discretion or usurpation of judicial power. The petitioners have the burden of showing that their right to issuance of the writ [requiring recusal] is 'clear and indisputable.'") (citations omitted). Indeed, "a party is not entitled to mandamus merely because it shows evidence that, on appeal, would warrant reversal of the district court." *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003).

Mr. Moody raises many of the same arguments with respect to Judge Coogler's recusal as he does with respect to our own recusal. He asserts that because Judge Coogler serves on a district court in Alabama, within the Eleventh Circuit, recusal is mandated under § 455(a), as an informed objective, disinterested, lay observer would entertain a significant doubt about his impartiality. He also contends that, because of his status as a district judge within this Circuit, Judge Coogler has an interest that could be substantially affected by the outcome under § 455(b)(4).

As we see it, Judge Coogler properly exercised his discretion in declining to recuse himself for substantially the same reasons discussed earlier. Judge Coogler, like the members of this panel, occupied no federal judicial position at the time of Judge Vance's death, has had no close connection to Judge Vance or his relatives, and took no part in the underlying investigation and prosecution of Mr. Moody. Judge Coogler, furthermore, was never personally subjected to the threats that were sent to Eleventh Circuit judges sitting at the time Judge Vance was murdered. *See United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003) (recusal of district judge was not warranted in light of threat that "did not specify a particular judge"); *Moody IV*, 977 F.2d at 1423 (holding that district judge in Georgia did not have to recuse from Mr. Moody's perjury/obstruction of justice case because of Mr. Moody's alleged involvement in the murder of Judge Vance and Mr. Robinson). And to the extent that Judge Coogler could be characterized as belonging to a prospective "victim class" of district judges in this case, the same characterization would apply to all federal district judges nationwide.[4]

Mr. Moody also argues that we should order Judge Coogler to recuse because he teaches as an adjunct professor at the University of Alabama School of

---

[4] At oral argument, Mr. Moody's counsel was unable to articulate a concrete, workable standard for determining which district judges would be able to hear Mr. Moody's case if we were to grant his mandamus petition. For example, one would think that a district judge from another circuit whose family members were killed by a disgruntled *pro se* litigant might not be the appropriate person to rule on Mr. Moody's habeas corpus petition, but at oral argument Mr. Moody's counsel was equivocal about such a scenario.

Law, which in turn maintains a professorship named in Judge Vance's honor, and because of some perceived connection between Judge Coogler and the Robert S. Vance Federal Building and United States Courthouse in Birmingham, Alabama. But the mere fact that Judge Coogler teaches at a university that has chosen to memorialize Judge Vance does not mandate recusal. *See Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir. 1993) (holding that "no reasonable observer would assume that [the district judge] had extra-judicial knowledge of this case or otherwise question [his] impartiality" because the district judge merely served as adjunct professor (without a salary) at, and donated to, the defendant university). Nor does the presence of a federal building and courthouse named for Judge Vance in Birmingham entitle Mr. Moody to a writ of mandamus. As Judge Coogler explained, he is not stationed in Birmingham, and does not hold court there.

**V**

We recognize the systemic and case-specific importance of recusal in our judicial system and the grave consequences that may result from an erroneous failure to recuse. But given the unique circumstances of this case, including the many years that have passed since Judge Vance's death, we conclude that we are not required to recuse as a panel under 28 U.S.C. §§ 455(a) & 455(b)(4), and that Mr. Moody is not entitled to a writ mandamus requiring the recusal of Judge Coogler. We take Judge Coogler at his word that he will be able to rule on

Mr. Moody's habeas corpus petition fairly and impartially, and have no doubt that he will take appropriate action should he decide otherwise in the future.

**MOTION FOR RECUSAL OF PANEL DENIED; MANDAMUS PETITION DENIED.**